STATE OF MISSOURI, *ex rel* CIRCUIT ATTORNEY FOR SECOND JUD-
ICIAL CIRCUIT, Appellant, *vs.* CALLAWAY COUNTY COURT,
Respondent.

1. *Railroads—Louisiana and Missouri River Railroad—Charter—Act of 1868
amending charter invalid.*—The act of 1868 which professed to amend the char-
ter of the Louisiana and Missouri River Railroad was illegal and void, and did not
constitute a new charter of said Road. (State vs. Saline County, ante p. 350 af-
firmed).

2. *Injunction—Subscription—Railroads—Negotiator of bonds—County courts
—Parties.*—In an action by in junction when the petition alleges that a
County Court had made an unlawful subscription to a Railroad, and had delivered
a quantity of bonds issued to pay such subscription into the hands of an agent to
be negotiated, and had levied a tax to pay said bonds and the interest thereon ;
and the petition prayed that the subscription be cancelled, and that the County
Court and the Justices thereof and said agent be restrained from commission of
said acts: *Held*, that the Railroad and the agent for the negotiation of the bonds
as well as the County Court and its Justices were proper parties to the action.

*Appeal from Callaway Circuit Court.*

*Overall, Circuit Attorney and Adams & Guitar, and Ed-
wards & Dunckan,* for Appellants.

I. The South Branch of the Louisiana and Missouri River
Railroad was a new enterprise not authorized by the original
act or charter, and the only authority for the new enterprise is
the amendatory act of 1868. The subscription forming the
basis of the bonds in question was wholly unauthorized, no
assent having been given to the same by the qualified voters
of the county. The legislature could not confer on the
County Court the power to make such subscription unless "two
thirds of the qualified voters of the county at a regular or
special election assented thereto" (Art. XI, § 14, Const. of Mo.)
The subscriptions and bonds are therefore absolutely void and
the County Court has no authority to harrass the tax-payers
and confiscate their property by illegal levies for the pay-
ment of these bonds.

II. The Circuit Courts by the Constitution and also by the
Statute Laws of this State have a superintending control over
County Courts whether acting in an administrative or jud-
icial capacity. This is a proceeding invoking the proper ex-
ercise of this superintending control and ought to have been

sustained by the Circuit Court. (Art. VI, §§ 21, 23, Const. of Mo. Chapter 141, Gen. Stat. 1865 pages, 550-551, § 2; Tetherow vs Grundy County Court, 9 Mo., 120; State *ex rel* West and others vs. Clark County, 41 Mo., 50, 51; Vitt vs. Owens, 42 Mo., 512; Hooper vs. Ely, 46 Mo., 505.)

III. A proceeding in the name of the State, brought by the Circuit Attorney, is the only proper way in which the Circuit Court, in a case like this, can exercise its superintending control over the County Court. The county itself is paralized by the very tribunal created to attend to its business and can not *sue its own court.* And the county being an integral part of the State for governmental purposes, whatever injures the county injures also the State. And as the county cannot sue its own court, the only proper remedy in such case must be in the name of the State. (See authorities cited on the 2nd point; Doolittle vs. The Supervisors of Broome County, 18 New York, 155; Roosevelt vs. Draper, 23 New York, 318; Davis vs. The Mayor of New York, 2 Duer, 663; The Board of Supervisors of Iroquois County, *et al.*, vs. Keady *et al.*, 34 Ill., 296–297; Sto. Eq. Pl., § 49; Mitf. Eq. Pl. by Jeremy, 4, 21, 24; Cooper Eq. Pl., 21, 22, 191, 102, 202; Atty. Genl. vs Vernon, 1 Vern., 277, 282, S. C., 370; Edwards on Parties in Eq., 60, 61; Calvert on Parties, ch. 3, §§ 21, 301, 308; 2 M. & C., 129; 1 Keen, 153; 2 M. & C., 613; 2 Keen, 190; 9 Sim., 30; 1 M. & C., 171; 16 Sim., 228; 13 Sim., 547; 1 Bligh, N. S., 313; 8 Sim., 193, 373.)

IV. The defendants were all proper parties to this proceeding. They were all interested, so that complete justice could not be done in the premises without bringing them before the court. But if any of the defendants were improperly made parties, they should have demurred alone, and not jointly with the others. See Ashley vs. Winston, 26 Mo., 210.

V. The subscription made by the County Court of Callaway county to the South branch of the Louisiana and Missouri River Railroad is wholly unauthorized by the original charter, and in derogation of the Constitution of this State.

1. Under the original charter, approved March 10th, 1859, the

company was authorized to build but one *main trunk line.* (Sess. Acts 1858-9, 400, § 35.)

2. Under the original charter the County Court of Callaway county were authorized to subscribe to "*one main trunk road,*" created by said charter.

3. The subscription in question is made to the capital stock of the "South Branch of the Louisiana and Missouri River Railroad," see order of County court.

4. The "South Branch of the Louisiana and Missouri River Railroad" had no existence under the original charter, but was created and authorized by the amended charter of said company, approved March 24, 1868. (Sess. Acts 1868, 97 § 22.)

5. The subscription in question was made to "the South Branch of the Louisiana and Missouri River Railroad" after the 4th of July 1865, the date on which the present constitution of this State went into effect. Said subscription was made by the County Court of Callaway county, without having first submitted the question of making the same to the qualified voters of said county, at a regular or special election held therein, and without having obtained the assent of two-thirds of said qualified voters thereto, either prior or subsequent to the making thereof. Such subscription is illegal and invalid if made without such submission and assent. (Art. XI. § 14, Const. of Missouri ; The St. Joseph and Denver City R. R. Co. vs. Buchanan County Court, 39 Mo., 485 ; State *ex rel.* Mo. & Miss. R. R. vs. The Macon County Ct. 41 Mo. 453.

The points and authorities relied upon by *R. A. Campbell* and *Sharp & Broadhead,* for Defendant in Error, are substantially the same as those urged by Sharp & Broadhead in the case of the State vs. Saline county, ante p. 350, and are therefore omitted.

*Ewing & Smith and Hayden, Kouns & Hockaday,* for Defendants in Error.

I. There is a defect of parties plaintiff.

That the State is improperly made a party, and that the suit is improperly brought in the name of the State, is clear from the simple fact that the State has no interest, legal or equitable, in the subject matter of the action. (State vs. Parkville and Grand River Railroad Company, 32 Mo., 499.)

This principle applies as much to the case in which the Circuit Attorney proceeds in the name of the State, as if the suit were brought at the relation of a private citizen.

The Circuit Attorneyship is an office created by statute. The officer is the creature of the statute so far as his official powers and duties are concerned.—Every power and duty incumbent upon him is enumerated in and conferred by the statute, and without the statute he can do nothing. There is no statute which confers upon him the right or duty to make the State a party to this proceeding; and the mere fact that such officer commenced suit in the name of the State, does not confer on the State any interest in the subject of the action which the State had not antecedently. The right of the State does not depend upon *his* action; but his right to act depends upon the interest which the State has. If the State has not (without any action of the Circuit Attorney) such an interest in the controversy as to devolve this duty upon him, the case gains nothing by the fact that the Circuit Attorney commits the State to it as a party plaintiff. (Gen. Stat., 1865, sec. 10, page 142; *Id.*, sec. 1, page 632.)

II. There is a defect of parties defendant.

(*a.*) In this case the acts which are sought to be enjoined or prohibited are the issuing of certain bonds, the sale of them, and the levy of a tax to pay them with. It is not anywhere alleged in the petition that the L. & M. R. R. Co. has done, is doing, or has threatened to do, or to aid in doing, either of these acts; or that said defendant ever advised, instigated, approved of, or procured the doing of either of said acts; or that she is a necessary party to the complete determination of the action, or that she ought to be, or can be, included in any decree that could be made upon the allegations of the petition in this case. Therefore, the L. & M. R. R. Co. is improperly made a party defendant.

(*b.*) Thomas L. Price is improperly made a party defendant.

It is not alleged in this petition that said defendant has done, is doing, or is about to do, any of the acts complained of in said petition. It is not alleged that he has any interest whatever in the subscription, bonds or tax, or that he at any time advised, instigated, approved of, or procured the doing of any act complained of.

(*c.*) George Bartley, G. E. O. Hockaday and William F. Dunn are improperly made parties.

The petition shows very clearly that the acts complained of were done by these gentlemen as the county court of Callaway county. As mere individuals there is really not a single allegation in the petition which affects them. Their acts as a court are sought to be enjoined or prohibited, and as simply administrative or ministerial, and for this very reason no injunction or prohibition could be issued by the court in the premises. (Vitt *vs.* Owens, *et al.*, 42 Mo., 512; State *ex rel.* West *vs.* County court of Clark county, 41 Mo., 44.)

III. But the petition does not state facts sufficient to constitute a cause of action, as is shown by two leading considerations. (1.) In the language of our Supreme Court in "State vs. Parkville and Grand River Railroad Co., 32 Mo., 496: If the county court should do all that the bill charges it has threatened to do—issue the bonds and levy and collect the tax—it does not appear that the injury to the tax-payers would be irreparable, or such as could not be redressed by an action at law; and unless it thus appears, it is not a case for equitable relief."

(2.) But if the allegations of the petition are true, those allegations do not charge the defendants with doing, or with intending to do, any act which they have not the legal right to perform.

Under the act of incorporation of March 1868, there is no doubt that the only proper defendant in this case (to-wit, the County court,) had the legal right to do all the acts complained of. It has already been decided (State *ex rel* Mo. & Miss. R. R. Co. vs. Macon County court, 41 Mo., 453) that this legal

right of the County court under their charter was not annulled or impaired by Art. XI, § 14 of the Constitution. It is also decided that this said legal right is not affected or impaired by section 30 of the general act of 1861, nor by General Statutes, chap. 63, sec. 7, p. 338, and the reasoning in this case, and the case of "City and County of St. Louis vs. Alexander," (23 Mo. p. 507) conclusively shows that the rights of the defendants under their charter is not affected or impaired by section 30 of the General Railroad Law of 1855. (R. S., 1855. chap. 30, sec. 30, p. 427.)

If, therefore, said right has been in any way impaired or affected, it must have been by the act of March 28, 1868, (Sess. acts, 1868, page 97.) But this act of amendment does not so affect their rights.

The petition itself shows that no subscription was ever made by the county court of Callaway county under said amended charter.

It was perfectly competent for the Legislature to authorize by statute, after the adoption of the constitution, that a legal and existing subscription should be applied, in a particular way, to the purposes for which it had been made, and to enaable the railroad company to protect the county which had subscribed the funds, and this is all that the amended charter does, so far as the subscription of Callaway county is concerned.

There is no question about the right of the County court to make the subscription under the original charter. It is a prinple which pervades our whole system of law, that statutes can not be repealed by implication, and that statutes on the same subject shall be so construed as that they shall stand together when it is possible that they can do so; as in the cases already cited of "City and County of St. Louis vs. Alexander," and "Missouri and Mississippi Railroad Co. vs. Macon County Court." This principle, in its application to the present question, shows conclusively that the amended charter does not affect the right of the County court to make the subscription even if it had been made after the passage of the same.

The charter of the company has never been amended as to

the very point in issue in this case. The right of the County court to make subscriptions to the capital stock of the road is *not legislated upon* at all in the amended charter. That right is not derived from, affected by, nor dependant upon the amended charter. The only legislation that refers to the question at all, is the 22d section, which simply directs that the subscriptions made to the capital stock, under the original charter, shall be used in a particular way, and does not pretend to give any new power to the County Court, or any power at all, to make such subscription. Moreover the principle of construction applied to the General Statutes is applicable here, and the amended charter, as to this subject, is a continuation of the original charter and not a new enactment. (Gen. Stat., 1865, page 883, §§ 5, 6.)

The error, (as to the right of the County Court to make the subscription,) into which the plaintiff in error seems to have fallen is, that the subscription under the amended charter was to the *South Branch* of the L. & M. R. R. Co., when really (admitting that the subscription of five hundred thousand dollars was made under the amended charter,) it was made to the Louisiana and Missouri River Railroad *Company* and not to the South Branch. The amended charter only changed the name of the road—it called it a branch instead of a trunk road—but the road itself is to run over precisely the same ground under the amended charter that it did under the original charter. *It is precisely the same enterprise*, conducted by the same Board of Directors, running over the same ground, and having the same objects in view under one charter that it has under the other. So at last it is difficult to perceive that the amended charter has made any material change in the enterprise, or that its effects and objects are any thing more than to aid and facilitate the success of that enterprise as inaugurated under the original charter.

IV. The petition does not state facts sufficient to constitute a cause of action in this, that if the whole action of the County Court is as illegal, unconstitutional and void as the petition alleged it to be, the wrong cannot be remedied in this case.

26—VOL. LI.

(State vs. Parkville and Grand River Railroad Company, 32 Mo., 496; City and county of St. Louis vs. Alexander, 23 Mo., 483; Sayre vs. Tompkins, 23 Mo., 443; Vitt vs. Owens, 42 Mo., 472; West vs. Clark County court, 41 Mo., 44; Deering vs. N. Y. & Cumberland R. R., 1 Am. Rail. Cas. 152, and cases there cited.)

V. The State has no right to have or maintain this action, because the State is the sovereign, and she authorized all the acts complained of in the petition. The Legislature has all the power of the State. Even if the Legislature be only the agent of the State, still the State cannot maintain the action, for the charters of the company are acts of the General Assembly, and the State cannot repudiate the acts of her agent. (People vs. Renselaer & Saratoga Railroad Company, 2 Am. Rail. Cas. 447.)

With these views we submit the case, feeling confident that this court will affirm the judgment of the court below.

SHEPLEY, Special Judge, delivered the opinion of the court.

This was a proceeding in the nature of an injunction brought by the State, through the circuit attorney of the Second judicial district, against the County Court of Callaway county and the justices thereof, the Louisiana and Missouri Railroad Company and Thomas L. Price, to restrain the issuing and negotiation of certain bonds of Callaway county, issued and to be issued in payment of a subscription to the capital stock of the railway company made by the county, which subscription is alleged to be illegal and void.

The petition, after alleging the incorporation of the railroad company in 1859, and stating the line of the railroad, as authorized to be constructed by that charter, goes on to state the passage by the Legislature of the act of the 24th of March, 1868, alleged to be an act amendatory of the charter (the force and effect of which we have considered in the case of the State vs. Saline county, decided at the present term); that the amendment was duly accepted by the railroad company, "and became, and is to all intents, the charter of said company;" that by the amendatory act the railroad company is invested

with the power to locate and construct a branch road, to be known as the South Branch, which was a new and independent enterprise, and that by that act subscriptions to the branch and main lines were to be kept separate, and that subscriptions to one cannot be used for the other; that the main line, as located, does not touch Callaway county, but the south branch runs through it.   That in August, 1868, the County Court of Callaway county, without submitting the matter to the qualified voters of the county, made a subscription of $500,-. 000 to the "South Branch of the Louisiana and Missouri River Railroad," which was entered on the subscription book of the branch road.   That the subscription so made was void.   That in 1868 and 1869, the County Court ordered to be executed, and did execute and place in the hands of defendant, Price, for negotiation, $200,000 of the bonds, which were then in his hands, and he received them knowing that they were void.   That in 1869 the County Court levied a tax in the payment of these alleged illeged bonds and the interest thereon, and that such taxes were then in the hands of the Collector of the county for collection.   That the County Court will, if suffered to go on, by this unlawful taxation, appropriate to the use of the railroad company in payment of said illegal bonds the greater part of the taxable property of the county, and that the State will be greatly hindered and prevented from collecting its revenues; that irreparable loss and damage will be inflicted upon the tax-payers of the county and State; and prays that the Circuit Court, in the exercise of its superintending control over the County Court, restrain that court and its Justices in their illegal acts; that the bonds issued be delivered up and cancelled; that the orders of the County Court imposing a tax be annulled, and the subscription to the South Branch be cancelled, and for other relief.   Copies of the several orders of the County Court are made exhibits to and filed with the petition.

To the petition the defendants demurred, upon the ground that the suit was improperly brought in the name of the State; that Price and the Justices of the County Court were not nec-

essary or proper parties ; that the County Court had a perfect right to do what they did ; that the action of the County Court was ministerial, and the Circuit Court had no jurisdiction of the case either by prohibition or injunction; that if illegal neither the State nor any tax-payer could be injured ; that by the showing of the petition the injuries, if any, are not irreparable, and there is an adequate remedy at law ; that the allegation that by these acts the revenue of the State is endangered, is absurd on its face and impossible.

Upon the hearing the demurrer was sustained, and judgment was given for the defendants.

As will be seen, the subscription alleged to be invalid is made to the stock of the same railroad company, the charter of which and the alleged amendment thereto came up and was examined by the court in the case of the State of Missouri *ex rel* Circuit Attorney against Saline county and others, decided at the present term. Saline county is on the south side of the Missouri river, and the route of the railroad could not possibly pass through that county, as fixed by the original charter. Callaway county is on the north side of the river, and may fairly be assumed to be one of the counties through which the route of the railroad, as designated in the charter of 1859, might run.

The change of the route which was supposed to be affected by the amended act, was where in the twenty-first section of that act it gave said company the power to construct a road from Louisiana through or near Bowling Green to such point on the north or south bank of the Missouri river as the directors might select, and by the twenty-second section to construct such branch, to be called the South Branch, from the main line at a point not further east than Bowling Green to any point on the Missouri river between St. Aubert, in Osage county, and the city of Boonville, in Cooper county.

It is stated in the petition that the main line, as fixed by the act of 1868 does not run through Callaway county, but that what is called the South Branch as fixed does, and that the subscription complained of was made to the South Branch.

Upon reference to the decision in the case of the State vs. Saline county, before referred to, it will be seen that it was there decided that the alleged amendatory act of 1868 was il legal and void, and, therefore, that the petition, in undertak-- ing to state that that act is and was the charter of the company, is entirely in error.

The petition (the truth of which, as the judgment was on the demurrer, must be assumed) distinctly states that the subscription was to the South branch of the Missouri and Mississippi Railroad, and was made in August 1868.

Apparently there is a violation of law in making the subscription. It is illegal as being made upon a branch road constructed and marked under the provisions of an act which we hold to be void, and we are not allowed in deciding this case to look into what are filed as exhibits with the petition, but are confined to the case as presented in the petition itself. As the case now stands, having in the case of the State vs. Saline County affirmed the jurisdiction it will have to be reversed; and as we have decided to remand it, it may be proper to say that if the exhibits show the true facts of the case, the county of Callaway had in January, 1867, and before this supposed amendatory act was passed, ordered a subscription to be made to the stock of the company, and by their proceedings of June 11th, 1868, it would appear that the subscription was made to the corporation, and for the construction of the line as it originally stood, but on that day the County Court, approving the acceptance of the amendment by the company, ordered that the commissioners "transfer the stock taken by said commissioners" in the "capital stock of the company to the branch books of said company."

If there had been no change in the subscription, and no attempted amendment, and the company had constructed their line to the Missouri river substantially as they have done, it may be that the subscription would have been perfectly legal. The facts are not before us so as to form any opinion upon the question or upon the effect of the subsequent action of the County Court or the railroad.

It is objected that the railroad company and Price are not proper parties to the proceedings.

The petition asks that the subscription to the stock books be cancelled, and the bonds be surrendered and cancelled. The subscription cannot be cancelled, as the stock books are in the hands of the company, except by making the railroad company a party to the proceeding.

It might be that the practical results would be the same if in a suit against the county alone this transaction was declared to be illegal, but as the prayer is that the subscription may be cancelled, we cannot say that the railroad company is an unnecessary party. Nor can Price be considered an unnecessary party, as it is averred that the bonds alleged to be illegal are placed by the County Court in his hands for negotiation as the agent of the county.

The case is reversed and remanded. Judge Wagner dissenting on the question of jurisdiction, and not concurring in holding that the act of 1868 is void. Judge Bliss concurs in the result.