# WILFRED W. BROWN v. LOUISIANA & MISSOURI RIVER RAILROAD COMPANY and CHICAGO & ALTON RAILROAD COMPANY, Appellants.

**Division One, April 2, 1914.**

1. **CHARTER POWERS: Alteration by Statute: Authorized by Constitution: Impairment of Contract: Liability of Lessor Railroad.** The Act of March 24, 1870 (Sec. 3078, R. S. 1909), which makes a lessor railroad company after the lease of its property liable for the acts and the liabilities of the lessee, was not void and did not impair any contractual right given to the said lessor by a special charter enacted at a prior date at the same session of the Legislature (Laws 1870, p. 93) whereby said lessor was empowered to lease its property free from any liability for the torts or other acts of the lessee, since the Constitution of 1865 provided that all special acts could "be altered, amended or repealed," and authorized the Legislature to pass general laws to effectuate those purposes.

2. **DIVERSE CITIZENSHIP: Misjoinder of Parties Defendant: Domestic Lessor: Foreign Lessee: Removal to Federal Court.** Where the statute makes a lessor railroad company liable for all torts and acts of its lessee "as if it operated the road itself," it is not a misjoinder of defendants to sue both the domestic lessor and the foreign lessee corporation for the personal injuries inflicted upon plaintiff by the lessee in the operation of its train in this State; nor is it error to deny the petition filed by the nonresident defendant asking for the removal of the case to the Federal court upon the assumption that a separable controversy had been presented.

3. **NEGLIGENCE: Cause of Action: Derailment of Passenger Train.** Evidence tending to show that the train upon which plaintiff was a passenger was derailed by the breaking of a

steel rail and that he was injured makes out a prima-facie case, which requires the court to submit the issue of negligence to the jury, notwithstanding the evidence of defendant that the rail was of standard size, that it was properly laid, spiked to the ties and attached to the next rail, that it had been in use less than four years and disclosed no apparent flaw, that it had been tested at the factory, that it had been inspected by the track walker on the day of the accident and observed to be in good condition, and that after the accident it furnished indication of a fresh break. Such a case falls strictly within the rule of *res ipsa loquitur.*

4. ———: ———: ———: **Res Ipsa Loquitur.** The rule of *res ipsa loquitur* implies a presumption of negligence as against a carrier whenever an injury is occasioned to a passenger by any defect in its train of cars or railway track which would not ordinarily have occurred had its track and train been in the condition of safety prescribed by the transportation business in which it is at the time engaged; and when such presumption arises the issue of negligence is for the jury.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

Affirmed.

*Scarritt, Scarritt, Jones & Miller* for appellants.

(1) Plaintiff has no case against defendant Louisiana & Missouri River Railroad Company. Said defendant is sought to be held liable in this case solely by virtue of Sec. 1060, R. S. 1899 (Sec. 3078, R. S. 1909). Said statute is not applicable to this defendant, and an attempt to make such statute applicable renders such statute unconstitutional and void as impairing the obligation of the contract between defendant corporation and the State of Missouri. Said company received its charter by an act of the Legislature, passed on January 19, 1870. Laws 1870, p. 93. This act or charter was accepted by a vote of the directors of said company on the same date, and this law chartering this company thereupon became a binding contract between that company and the State. Section

43 of said act gave to said company the right to lease its road to any other railroad company "upon such terms as may be mutually agreed upon," without any condition or restriction whatever as to the lessor company remaining liable for the acts of the lessee company, or otherwise. The lease of this lessor company to the lessee company in this case, expressly provides that the lessee company only, and the lessor company in no event, should, after the making of said lease, be liable for any of the acts of the lessee company. Sec. 1060, R. S. 1899 (now Sec. 3078, R. S. 1909), under which it is sought to hold the lessor company liable, was passed and went into effect after defendant's charter was accepted and went into effect. The charter rights of a corporation cannot be impaired by subsequent legislative acts, or even by subsequent constitutional provisions. State ex rel. v. Greer, 78 Mo. 188; State ex rel. v. Board of Trustees, 175 Mo. 52; Leete v. Bank, 115 Mo. 184; United States v. Railroad, 118 U. S. 237; Dartmouth College v. Woodward, 4 Wheat. (U. S.) 656; State ex rel. v. Gas Co., 104 Mo. 472; Collins v. German-American M. L. Assn., 84 Mo. App. 555. Some confusion has at times arisen in the minds of the bench and bar of Missouri upon this point on account of some early decisions based upon a general statute that was for some years in effect in this State. In 1845 apparently in order to avoid the effect of the decision in the Dartmouth College case the Legislature passed the following general law: "The charter of every corporation that shall hereafter be granted by the Legislature shall be subject to alteration, suspension and repeal in the discretion of the Legislature." R. S. 1845, chap. 34, art. 1, sec. 7, p. 232. Substantially this same law is found in the revision of 1855. R. S. 1855, chap. 34, art. 1, sec. 7, p. 371. After that, however, this State, through its Legislature, acquiesced in the decision in the Dartmouth

College case, and in the revision of 1865 the above statutes not only do not appear, but in order to make the acquiescence of the State in the Dartmouth College case entirely clear there was enacted, in lieu of the above statutes, the following: "No charter of any corporation granted by the Legislature of this State shall be altered, suspended or repealed by said Legislature unless proof be made satisfactory to the Legislature that notice of such proposed alteration, suspension or repeal has been given to the president and secretary of such corporation for at least one month before the time at which such alteration, suspension or repeal will be proposed." G. S. 1865, chap. 62, sec. 21, p. 330. This was the law that was in effect when this defendant's charter was granted. It is clear from this statute that any charter thereafter granted could not be altered except by a direct and specific act of the Legislature passed in pursuance of the notice provided by the law of 1865. As said company's charter could not be modified without notice and consent, by direct act, it certainly could not be indirectly modified, without notice and consent. Therefore this company gets its authority from the State to lease its road solely from its charter, and the subsequent act of the Legislature (Sec. 1060, R. S. 1889), is not applicable to this company. By its charter this company is given express authority to lease its road to any other company, and there is no reservation or condition that the lessor shall remain liable for the acts of the lessee. Under such circumstances it has been repeatedly held that a lessor railroad company cannot be held liable for the act of its lessee. Moorshead v. Railroad, 203 Mo. 121; Moorshead v. Railroad, 119 Mo. App. 541; Hahs v. Railroad, 147 Mo. App. 262; Chlanda v. Transit Co., 213 Mo. 244; Westervelt v. Transit Co., 222 Mo. 325; Graefe v. Transit Co., 224 Mo. 232. (2) The State circuit court was without jurisdiction over this case.

The Chicago & Alton Railroad Company contends that at the time this case was tried and judgment rendered therein, the circuit court of Audrain county, in which the case was tried, had no jurisdiction of this cause by reason of the fact that the cause had theretofore been duly removed by this appellant to the proper United States circuit court. (a) It is set forth in the petition for removal that the defendant The Louisiana & Missouri River Railroad Company was incorporated by a special act of the State on January 19, 1870, and that under its said charter said railroad company was given authority by the State to lease its road without any reservation or condition that the lessor company should be liable for any acts of its lessee; that by virtue of such charter authority said company did lease its road by lease dated August 1, 1870, upon the express terms and conditions expressed in such lease that the lessee should operate and maintain the road and that the lessor should not be liable and that the lessee only should be liable for all acts and conduct of the lessee, and that at the time of the accident complained of said road, at the time and place in question was being run, operated and maintained by The Chicago & Alton Railroad Company under said lease and upon such terms therein contained, and that under said charter and lease plaintiff had no cause of action against the Louisiana & Missouri River Railroad Company. For the purposes of removal, the averments of the petition for removal (rather than the averments of plaintiff's petition) are taken as prima-facie true. Carlisle v. Tel. Co., 116 Fed. 896; Clarkhuff v. Railroad, 26 Fed. 465. If any of the averments of the petition for removal are controverted, the issues so made must be determined by the Federal court rather than by the State court. Carson v. Dunham, 121 U. S. 421; Railroad v. Bailey, 151 Fed. 893. It appears as a matter of law (Point one of this brief) that under such

charter and lease plaintiff had no cause of action against defendant Louisiana & Missouri River Railroad Company. There was therefore more than a "separable" controversy between plaintiff and The Chicago & Alton Railroad Company. Rather, the only controversy in the case was between plaintiff and said defendant. Such being the case, this cause was clearly removable by defendant, The Chicago & Alton Railroad Company. Railroad v. Stepp, 151 Fed. 908; Carlisle v. Tel. Co., 116 Fed. 896. (b) It is further charged in the petition for removal that the Louisiana & Missouri River Railroad Company was joined as a party defendant solely for the purpose of attempting to fraudulently and illegally deprive the United States Circuit Court to which this suit is removable of jurisdiction. This allegation raised an issue which was triable only in the Federal court. Carlisle v. Tel. Co., 116 Fed. 896. (c) This case was removable to the Federal court for the further reason that even though said Louisiana & Missouri River Railroad Company should be deemed to be liable to plaintiff in this action, then the controversy was still a controversy between citizens of different States in this, that the controversy as between the plaintiff and The Chicago & Alton Railroad Company was a separate, separable and distinct controversy from the controversy, if any, between plaintiff and the Louisiana & Missouri River Railroad Company. Kelley v. Railroad, 122 Fed. 286.

*Fauntleroy, Cullen & Hay* and *Barclay & Orthwein* for respondent.

(1) The Louisiana-Missouri River Railroad Company, being the original lessor, was liable to plaintiff in this case. From 1845 down to the adoption of the Constitution of 1865, the following general law was in force in the State of Missouri: "The charter of every corporation that shall hereafter be granted by the

Legislature shall be subject to alteration, suspension and repeal in the discretion of the Legislature.'' R. S. 1845, chap. 34, art. 1, sec. 7, p. 232. Substantially this same law is found in the revision of 1855. R. S. 1855, chap. 34, art. 1, sec. 7, p. 371. The Constitution of 1865, art. 8, sec. 4, embodied this provision: ''Corporations may be formed under general laws, but shall not be created by special acts, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered, amended or repealed.'' Article 4, section 27: ''The General Assembly shall pass no special law for any case for which provision can be made by a general law; but shall pass general laws providing so far as it may deem necessary for the cases enumerated in this section, and for all other cases where a general law can be made applicable.'' At the time the charter was granted, and at the time the lease was made, the following law was in force: ''47. The Legislature may, at any time, alter or amend this chapter, but such amendment shall not impair the rights of companies previously organized, or take away or impair any remedy given against such company, its stockholders or officers, for any liability which shall have been previously incurred.'' ''48. All existing railroad corporations within this State and such as may be hereafter chartered or formed, shall respectively have and possess all the powers and privileges contained in this chapter; and they shall be subject to all duties, liabilities and provisions not inconsistent with the provisions of their charter herein contained.'' Laws 1865, chap. 63, secs. 47, 48. Under Sec. 4, art. 8, Constitution of 1865, a corporation can have no valid existence unless authorized by general law. State ex rel. v. Railroad, 48 Mo. 471; State ex rel. v. Corkins, 123 Mo. 56; State ex rel. v. Railroad, 151 Mo. 162. That the defendant, Louisiana & Missouri River Railroad Company, is lia-

ble has been judicially determined and established in an action by a servant against this same defendant. Markey v. Railroad, 185 Mo. 348, 200 U. S. 622; Dean v. Railroad, 199 Mo. 386; O'Donnell v. Railroad, 197 Mo. 110. The charter granted to the defendant company was subject to the general law concerning corporations, which gave the Legislature power to alter, suspend or repeal all charters thereafter granted. Constitution 1865, art. 8, sec. 4; Railroad v. Renshaw, 18 Mo. 210; Railroad v. Hughes, 22 Mo. 291; Gregg v. Mining Co., 164 Mo. 616; State v. Railroad, 242 Mo. 339. An act making a railroad company liable in damages for fires communicated by its locomotives is not unconstitutional as impairing, by subjecting it to an increased burden, the rights given it by its previously granted charter to propel its cars by steam, and with greater reason can it be held that a statute declaring that a railroad company which leases its road shall remain liable for damages, is valid. Matthews v. Railroad, 121 Mo. 298, 25 L. R. A. 161; Railroad v. Mathews, 165 U. S. 1; Campbell v. Railroad, 121 Mo. 340, 25 L. R. A. 175. The only question for serious inquiry, where legislation affecting the charter is the subject of complaint, is whether it does in fact impair the obligation of the contract; for there may be legislation touching the powers of the corporation which will not have that result. And there need be no particular liberality of construction in favor of the corporation, but rather the contrary. Railroad v. Maine, 96 U. S. 499; Wheaton v. Peters, 8 Pet. Appex. 725; Jackson v. Lamphire, 3 Pet. 289; Beaty v. Knowler, 4 Pet. 168. It is not the charter which is protected, but only any contract the charter may contain. If there is no contract, there is nothing in the grant on which the Constitution can act. Consequently, the first inquiry in this class of cases always is, whether a contract has

in fact been entered into, and if so, what its obligations are. Stone v. Mississippi, 101 U. S. 814; Water Supply Co. v. Mobile, 186 U. S. 212; Bridge v. Bridge, 11 Pet. 420. Charters of private corporations are subject to construction by the same rules of interpretation as other legislative grants. Grants of immunity to a corporation from legitimate governmental control are never to be presumed. On the contrary, the presumptions are all the other way, and unless an exemption is clearly established the Legislature is free to act on all subjects within its general jurisdiction as the public interests may seem to require. Exemption from future general legislation, either by a constitutional provision or by an act of the Legislature, cannot be admitted to exist unless it is given expressly, or unless it follows by an implication equally clear with express words. Bridge v. Bridge, 11 Pet. 420; Railroad v. Kentucky, 161 U. S. 677; Ornstine v. Cary, 204 U. S. 669; Delaware Railroad Tax, 18 Wall. 206; Bailey v. Magwire, 22 Wall. 215; Slidell v. Grandjean, 111 U. S. 412; Bridge Co. v. Bridge Co., 138 U. S. 287; Railroad Commission Cases, 116 U. S. 307; Railroad v. Philadelphia, 101 U. S. 528; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Pearsall v. Railroad, 161 U. S. 646; Railroad v. Minnesota, 134 U. S. 418; Newton v. Commissioners, 100 U. S. 561; Railroad v. Miller, 114 U. S. 176; Railroad v. Miller, 132 U. S. 84; Railroad v. Minnesota, 134 U. S. 467; Covington v. Kentucky, 173 U. S. 238; Bank v. Owensboro, 173 U. S. 646; Railroad v. Kentucky, 183 U. S. 517. (2) The lessor and lessee were jointly liable and the cause was not removable. All that has been said in support of our position as to the first point is applicable to defendants' contention in support of their second point, and the law and the facts considered, the case was not one that could be lawfully removed to the United States courts.

Under the decisions of this court and of the United States Supreme Court, this case was not removable. Railroad v. Dowell, 229 U. S. 102; Lanning v. Railroad, 196 Mo. 647; Stotler v. Railroad, 200 Mo. 107; Railroad v. Thompson, 200 U. S. 206; Railroad v. Willard, 200 U. S. 413; Railroad v. Schwyhart, 227 U. S. 184; Railroad v. Dixon, 179 U. S. 131; Railroad v. Carson, 194 U. S. 136. That the lessor and the lessee may be sued jointly and that the case is not removable certainly has been effectually settled by the decision of the Supreme Court of the United States in the Sheegog case. Railroad v. Sheegog, 215 U. S. 308; Railroad v. Miller, 217 U. S. 209.


## STATEMENT.

Plaintiff, a passenger on defendant's railroad, sued to recover for injuries received in a derailment of its train, February 6, 1909, which was caused by the breaking of a steel rail.

The action was brought against two defendants, one as lessor and the other as sublessee of the railroad. After an ineffectual effort to remove the cause to the Federal court, the sublessee, the Chicago & Alton Railroad Company, answered alleging a legal removal of the case, and a general denial and an improper joinder of its codefendant. The local defendant answered separately, denying jurisdiction, and averring under the statute sued on, which made a lessor railroad liable after the lease of its property, for the acts and the liabilities of the lessee (R. S. 1899, sec. 1060, now R. S. 1909, sec. 3078), that its rights and privileges under prior charter from the State were impaired contrary to the Constitution.

On the trial the plaintiff had judgment for five thousand dollars. Defendant duly appealed.

## OPINION.

BOND, J. (After stating the facts as above).— There is no claim that the judgment in this case is disproportioned to the injuries of plain-

Legislative Charter: Impairment By Subsequent Statute.

tiff. The only errors assigned by appellant are those arising upon the defenses set up in the separate answers. First, that the lessor, La. & Mo. R. Ry. Co., is not responsible for the act of its lessee, C. & A. Ry. Co.; second, that the filing of the petition for the removal to the Federal court ousted the trial court of jurisdiction; third, that plaintiff has no case on the merits.

As to the first of these contentions, the argument of appellant is, that the present action being based on a section of the statute (R. S. 1909, sec. 3078) which originated in an act of the Legislature approved March 24, 1870 (Laws 1870, p. 89), is not maintainable; because the same Legislature at a prior day, had enacted an amendment of the charter of defendant, whereby it was empowered to lease its property free from any responsibility for the torts or other acts of the lessee (Laws 1870, p. 93), and to permit the present suit under the later act which provided that all corporations of this State leasing their property to a corporation of another State ''shall remain liable as if it operated the road itself,'' would be to sanction the legislative impairment of the contract between the State and the local defendant, expressed in the aforesaid amendment of its charter.

The answer to this position is, that if amendment of the charter of the local defendant was constitutionally enacted and could be construed to grant said defendant the right to lease its property and exempt itself from the torts of the lessee, yet the later act prescribing that no such leases should relieve the lessor from responsibility, was a valid law in strict ac-

cord with the constitutional powers of the Legislature at that time, as will be shown.

That said act, now section 3078 of the revision of 1909, is constitutional, has been adjudged against this particular defendant, when assailed by a different objection. [Dean v. Railroad, 199 Mo. 386; Markey v. Railroad, 185 Mo. 348.] That said act is not subject to the present objection, will appear by the fact that since 1845 and continuously until the adoption of the Constitution of 1865, the Legislature reserved express power to itself, to alter, suspend or repeal at its discretion, the charters of all corporations. [R. S. 1845, chap. 34, art. 1, sec. 7, p. 232; R. S. 1855, chap. 34, sec. 7, p. 371.] And thereafter the Constitution of 1865 continued the same control over all corporations by providing that they should not be created by special acts, and requiring them to be formed under general laws, with a proviso that all general and special acts passed pursuant to this section "may be altered, amended or repealed," and authorizing the Legislature to pass general laws to effectuate these purposes. [Constitution 1865, art. 8, sec. 4; Constitution 1865, art. 4, sec. 27; State ex inf. v. Railroad, 151 Mo. 162; State ex rel. v. Corkins, 123 Mo. 56; State ex rel. v. Railroad, 48 Mo. l. c. 471.]

Under these words of the Constitution any act thereafter passed, original or amendatory, touching the charters of corporations was subject in all respects to future legislative control, and a similar provision was inserted by the Legislature when it passed a general act relating to railroad corporations in 1855. [G. S. 1865, chap. 63, secs. 47, 48.] These constitutional and legislative provisions were in full force at the time of the Act of 1870, which appellant claims amended its charter, and at a later day of the same session when the Legislature enacted the law which appellant insists took away the right given by the former act.

It follows, that if appellant's contention is correct in both respects, still the Legislature in so doing did not impair any contract between the State and said defendant; for it only did what it had full power to do under the Constitution and the law then existing.

This undoubted authority possessed by the Legislature to enact the law forbidding railways to lease the property so as to escape liabilities for the acts of the lessee (R. S. 1909, sec. 3038) renders it unnecessary to decide the question presented by respondent that the act under which appellant claims it was empowered to denude responsibility for the future operation of its railroad, by leasing it to its co-defendant, was void, because its title did not conform with the requirements of the Constitution.   [State v. Saline County Court, 51 Mo. 350; State v. Callaway County Court, 51 Mo. 395.]

We rule that there is no merit in the assignment of error, that section 3078 of the revision of 1909 is violative of any constitutional rights of the local defendant, and we hold that perforce that section, it is jointly liable with its codefendant, for any actionable tort which has been committed by its codefendant in the operation of the railway leased to it.

II.

From what has been said in the above paragraph, it is evident that there was no fraudulent misjoinder of the lessor residing within this State, and the lessee, residing outside, by the institution of this action against both of them.   And consequently the trial court did not err in denying the petition filed therein by the nonresident defendant, to remove this case to the Federal court upon the assumption that it presented a separable controversy.   [Railroad v. Dowell, 229 U. S.

**Fraudulent Misjoinder of Defendants.**

102; Railroad v. Sheegog, 215 U. S. 308; Stotler v. Railroad, 200 Mo. 107.]

Nor can we concur in the view of appellant's counsel that the record in this case discloses no cause of action in plaintiff. The evidence is undisputed that the train was thrown from the track by the fracture of one of the steel rails while passing over it and transporting plaintiff who was a passenger. Beyond question, this made a prima-facie case for plaintiff which made it the duty of the court to submit the issue of negligence to the jury, despite the fact that appellant introduced evidence tending to show that the rail which broke was of standard size, properly laid and attached to the ties; and that it had been in use less than four years; and according to the testimony of appellant, furnished indication of a fresh break, and disclosed no apparent flaw; and that it had been tested at the factory, and had been observed to be in seemingly good condition by the section foreman while walking over the track and inspecting the same on the day previous to the accident.

This case falls strictly within the rule of *res ipsa loquitur*, which affords a presumption of negligence as against a carrier whenever an injury is occasioned to a passenger by any defect in its train of cars or railway track which would not ordinarily have occurred had its track and train been kept in the condition of safety prescribed by the calling in which it is engaged. [Norris v. Railroad, 239 Mo. l. c. 715; Price v. Street Railway Co., 220 Mo. 435; Partello v. Railroad, 240 Mo. l. c. 137; 3 Thompson on Negligence, sec. 2809, p. 275.]

In speaking of submitting the case to the jury where such a presumption of negligence exists, it is said by a learned text-writer:

"The very nature of this presumption is such that it takes the question of the negligence of the defend-

ant to the jury in all cases. It requires him to explain the accident consistently with the conclusion of due care on his part; and whether he succeeds in doing so is necessarily a question of fact for the jury. The judge cannot decide that he has done so, without trying a question of fact, passing upon the credibility of witnesses, and deciding that an affirmative proposition of fact has been proved. This cannot be done in any jurisdiction where the system of trial by jury is properly understood and correctly maintained. Judges who undertake to perform this office in the place of juries, usurp the office of juries, and seize a jurisdiction which, it may well be assumed, has not been committed to them by the Constitution or the laws of any American jurisdiction, Federal or State.'' [3 Thompson on Negligence, sec. 2773, p. 238; Gleeson v. Railroad, 140 U. S. l. c. 435; Patton v. Railroad, 179 U. S. 658, 663, 45 L. Ed. 361; Anthony v. L. & N. R. R. Co., 27 Fed. 724.]

Under the foregoing authorities this case was necessarily one for the jury and since no other errors are assigned by appellant, the finding of the jury is conclusive on this appeal. The judgment is affirmed. All concur.